IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANDRE THOMPSON, | ) | CASE NO. 1:10CV1734 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE GWIN |
| v. | ) | |
| | ) | MAGISTRATE JUDGE VECCHIARELLI |
| KEITH SMITH, Warden, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2).

Before the court is the petition of Andre Thompson ("Thompson") for a writ of habeas

corpus filed pursuant to 28 U.S.C. § 2254 on August 9, 2010.  Thompson is in the

custody of the Ohio Department of Rehabilitation and Correction pursuant to journal

entry of sentence in the case of *State of Ohio vs. Thompson*, Case Nos. CR 490690

(Cuyahoga County 2007).  For the reasons set forth below, Thompson's petition should

be dismissed.

I.  Procedural History

The state appellate court hearing Thompson's direct appeal found the following

facts relevant to Thompson's appeal:

{¶ 2} In January 2007, Thompson was charged in a thirteen-count indictment.  Counts one and two charged him with the aggravated murder of Reginald Roberson ("Roberson") and contained a three-year firearm specification, a felony murder specification, and a separate mass murder specification for the attempted murders of Carnail Duckworth ("Duckworth"), Christopher Page ("Page"), and Antonio Knott ("Knott").  Counts three, four, seven, and eight charged Thompson with the aggravated robbery of Roberson and Duckworth.  Counts five, six, nine, and ten charged him with the aggravated robbery of Page and Knott.  Counts eleven, twelve, and thirteen charged him with the attempted murders of Duckworth, Page, and Knott.FN1

FN1. Counts three through thirteen each carried a three-year firearm specification.

{¶ 3} The matter proceeded to a jury trial in August 2007.  During the jury selection process, Thompson moved to suppress the photo array, arguing that the photo identification procedure used by Cleveland police was unnecessarily suggestive.  Following the hearing, the trial court denied the motion, finding that Thompson did not meet his burden of establishing that the procedure was unduly suggestive.

{¶ 4} Because Page was not available at the initial suppression hearing, he was questioned at a later time.  After his testimony regarding the photo array, the trial court again denied Thompson's motion, finding that the identification procedure was not "perfect" with regard to Page, but that the photo array was not unnecessarily suggestive and that there was no likelihood of irreparable mistaken identification based upon the procedure used.

{¶ 5} The matter then proceeded to a jury trial, where the following evidence was presented.

{¶ 6} On the evening of December 15, 2006, Roberson, Duckworth, and Knott had performed as male dancers at two dance clubs in Cleveland.FN2 Linda Alexander ("Alexander") and her sister, Shaletha Perry ("Perry"), arranged to meet Roberson and his friends, Duckworth, Page, and Knott, at the end of the evening.FN3  Alexander picked up her friend, Clarissa Pittman ("Clarissa"), and met Roberson, Duckworth, Page, and Knott at a gas station on Superior Avenue. The group, traveling in three cars, followed Alexander to a house on East 120th Street.  They all planned to go to Clarissa's apartment to socialize.  However, Clarissa first stopped by her grandmother's house to pick up her keys from her brother, Clarence Pittman ("Clarence").  All three cars parked across the street from Clarissa's grandmother's house.

2

FN2. Page is also a male dancer, but did not perform that night. He accompanied Roberson, Duckworth, and Knott to the two clubs.

FN3. Alexander was romantically involved with Roberson.

{¶ 7} Clarence and Thompson were sitting in a car parked in the driveway. Thompson exited the vehicle, walked to a red van, and retrieved an item from the van.  He then walked toward Roberson's vehicle.  Thompson wore a jacket with a hood and had a mask covering the lower half of his face.

{¶ 8} Clarissa, Alexander, and Duckworth were standing outside Roberson's vehicle when Thompson approached and pulled out a gun.  Clarissa pushed the gun away and told Thompson to "stop playing."  Thompson pushed her out of the way and said, "Ya'll know what it is, give me all you got," and shot at Duckworth.FN4  Roberson attempted to drive away, but Thompson fired several shots at Roberson's vehicle, causing Roberson to crash into the red van. Page attempted to assist Duckworth, but Thompson chased him and shot at him as well.  Alexander and Page drove to a gas station to call the police.

FN4. Thompson was also referred to as Dude, Ben, and Dre.

{¶ 9} Meanwhile, Knott also exited Duckworth's car to assist Duckworth. Duckworth told him to save himself and run.  As Knott ran away, Thompson and another male chased him and shot at him.  He called 911 as he ran away.  He identified the shooter as the taller of the two men chasing him.

{¶ 10} Thompson's girlfriend, Michelle Williams ("Williams"), testified that she was in the red van parked on the street.  She accompanied Thompson to East 120th Street to buy some marijuana.  She stated that Thompson was the only one who came to the van.  However, she claimed that Clarence was the shooter, and that Thompson had told her that Clarence and Clarissa were trying to rob Roberson, Page, Duckworth, and Knott.  She fled the scene with Thompson after Roberson's car hit their van.

{¶ 11} Williams further testified that she called 911.  She admitted making a false report that Thompson's van was stolen because she did not want any involvement in the matter.  She told police that she was carjacked at gunpoint. She admitted, however, that she failed to tell the police in both of her statements that Clarence was the shooter.

{¶ 12} The jury found Thompson guilty of the aggravated murder of Roberson as charged in count two of the indictment, with the three-year firearm and felony murder (principal offender) specifications attached.  The jury also found Thompson guilty of the aggravated robbery of Roberson and Duckworth, as charged in counts three, four, seven, and eight of the indictment and the

3

attempted murder of Duckworth and Knott, as charged in counts eleven and thirteen of the indictment.  Counts five, six, nine, and ten were dismissed by the trial court pursuant to Thompson's Crim.R. 29 motion.

{¶ 13} At sentencing, the jury recommended that Thompson be sentenced on count two to life imprisonment, with the possibility of parole after serving twenty-five years in prison.FN5  The court sentenced Thompson on counts three, four, seven, eight, eleven, and thirteen. It merged all three-year firearm specifications and sentenced Thompson to ten years in prison on count three and ten years on count four to run concurrently to each other, but consecutively to count two.FN6  The court merged counts seven and eight into counts three and four, respectively.  Thompson was sentenced to ten years in prison on count eleven, to be served consecutively to counts three and four, and five years on count thirteen, to run consecutively to counts three, four, and eleven, for an aggregate of fifty-three years to life in prison.

FN5. The three-year firearm specification was to be served prior to and consecutive with the life sentence on count two.

FN6. Thompson was also found guilty of each three-year firearm specification attached to counts three, four, seven, eight, eleven, and thirteen.

*State v. Thompson*, 2009 WL 344858, at *1-*2 (Ohio App. Feb. 12, 2009).

Thompson timely filed a notice of appeal in the state appellate court.  In his brief in support of his appeal, Thompson asserted five assignments of error:

I.    The convictions of appellant are against the manifest weight of the evidence.

II.    The trial court erred in denying defense counsel's motion to suppress the identification testimony and photo array.

III.    The trial court abused its discretion in denying defendant's motion for mistrial.

IV.    The trial court abused its discretion in failing to strike the testimony of Clarence Pittman.

V.    Defendant was denied the effective assistance of counsel.

On February 23, 2009, the state appellate court overruled Thompson's assignments of error and affirmed the judgment of the trial court.

4

Thompson timely filed a notice of appeal of the state appellate court's decision in the Ohio Supreme Court.  In his memorandum in support of jurisdiction, Thompson raised four propositions of law:

Proposition of Law No. I:

The convictions of Appellant are against the manifest weight of the evidence.

Proposition of Law No. II:

The trial court erred in denying defense counsel's motion to suppress the identification testimony and photo array.

Proposition of Law No. III:

The trial court abused its discretion in denying Defendant's motion for mistrial.

Proposition of Law No. IV:

The trial court abused its discretion in failing to strike the testimony of Clarence Pittman.

On July 29, 2009, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.

On May 24, 2010, Thompson asked leave of court to file a motion for a new trial. The court denied leave on June 7, 2010.  Thompson did not appeal this decision.

Thompson filed in this court a petition for a writ of habeas corpus on August 9, 2010.  Thompson asserts five grounds for relief in his petition:

Ground 1:     Manifest weight of evidence.

Supporting Facts:  Thompson argues that his convictions for aggravated murder, attempted murder, and aggravated robbery are against the manifest weight of the evidence because there was no credible direct identification of Thompson as the shooter.  He claims that all the independent witnesses provided various descriptions of the shooter that described Clarence Pittman as the actual shooter, not Thompson.

5

Ground 2:     Motion to suppress.

Supporting Facts:  . . . Thompson argues that the trial court erred in denying his motion to suppress the photo array and the witnesses' identification testimony. Thompson contends that the court abused its discretion in permitting overly suggestive investigative techniques.  He claims that the identification procedure used by Det. Smith was suggestive because the detective advised Duckworth, prior to making the identification, that the suspect was in custody.  He also claims that the only evidence that identified him as the shooter came from Clarissa and Clarence Pittman, whom he claims were involved in crime.

Ground 3:     Motion for mistrial.

Supporting Facts:  . . . Thompson argues that the court abused its discretion in denying his motion for mistrial because the State did not have good faith basis to ask Duckworth if Clarissa told the shooter, "Dre, stop playing, go back in the house."

Ground 4:     Failure to strike testimony.

Supporting Facts:  . . . Thompson argues that the trial court erred in failing to strike Clarence Pittman's testimony.

Ground 5:     Ineffective assistance of counsel.

Supporting Facts:  . . . Thompson argues he was denied effective assistance of counsel when defense counsel failed to voir dire Clarence Pittman.

Respondent filed an Answer/Return of Writ on December 9, 2010.  Doc. No. 14.

Thompson has not filed a Traverse.  Thus, the petition is ready for decision.

II

A.     *Jurisdiction*

Writs of habeas corpus may be granted by a district court within its respective

jurisdiction:

Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court

6

for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a) and (d).

Thompson was convicted in the court of common pleas in Cuyahoga County, situated in the Northern District of Ohio.  At the time he filed his writ of habeas corpus in the Northern District of Ohio, he was in prison pursuant to that conviction.  This court has jurisdiction over Thompson's petition.

B.      *Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings.  28 U.S.C. § 2254(e)(2).  There is no need for an evidentiary hearing in the instant case.  All of Thompson's claims involve legal issues which can be independently resolved without additional factual inquiry.

C.      *Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus.  28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief remain available, the petitioner has not exhausted state remedies.  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies.  *Anderson v. Harless*, 489 U.S. 4 (1982);

*Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989).  "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied."  *Picard*, 404 U.S. at 275; *see also Harris v. Reeves*, 794 F.2d 1168. 1174 (6th Cir. 1986).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims.  *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

Thompson has no remaining state remedies for his claims.  Because Thompson has no remaining state remedies, his claims are exhausted.

D.    *Procedural default*

Procedural default occurs when a petitioner fails to present fairly his constitutional claims to the highest state court in a federal constitutional context. *Anderson*, 489 U.S. 4; *Picard*, 404 U.S. 270.  Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . .  not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure."  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

8

Respondent contends that Thompson has procedurally defaulted his fifth ground for relief.  Thompson did not raise his fifth ground for relief, ineffective assistance of trial counsel, in the Ohio Supreme Court.  Because Thompson failed to present this constitutional claim to the highest state court,  the claim has been procedurally defaulted.

Thompson does not demonstrate cause and prejudice for his default, nor does he demonstrate that enforcing the default will result in a fundamental miscarriage of justice.  For these reasons, Thompson's fifth ground for relief, ineffective assistance of trial counsel, should be dismissed as procedurally defaulted.

III.

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.  *Carey v. Musladin*, 549 U.S. ___, 127 S. Ct. 649, 653 (2006);  *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000).  Law is "clearly established" only by holdings of the Supreme Court, not

9

its dicta, and the law must be clearly established at the time of the petitioner's

conviction.  *Carey*, 127 S. Ct., at 653.

Courts must give independent meaning to the phrases "contrary to" and

"unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may
> obtain federal habeas relief with respect to a claim adjudicated on the merits in
> state court.  Under the statute, a federal court may grant a writ of habeas corpus
> if the relevant state-court decision was either (1) "*contrary to* . . . clearly
> established Federal law, as determined by the Supreme Court of the United
> States," or (2) "*involved an unreasonable application of* . . . clearly established
> Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is

"contrary to" clearly established federal law if it reaches a conclusion opposite to that

reached by Supreme Court holdings on a question of law or if it faces a set of facts

materially indistinguishable from relevant Supreme Court precedent and still arrives at

an opposite result.  *Id.* at 405-06.  "A state-court decision will certainly be contrary to

our clearly established precedent if the state court applies a rule that contradicts the

governing law set forth in our cases."  *Id.* at 405.  A decision involves an unreasonable

application of federal law only if the deciding court correctly identifies the legal principle

at issue and unreasonably applies it to the facts of the case at hand.  *Doan v. Brigano*,

237 F.3d 722, 729-31 (6th Cir. 2001).  The court will examine Thompson's remaining

grounds for relief using the deferential standard applied to state court rulings on the

petitioner's claims.

A.   *Ground one:  Whether Thompson's conviction was against the manifest weight
     of the evidence*

Thompson asserts in his first ground for relief that his conviction was against the

10

manifest weight of the evidence because there was no credible direct identification of Thompson as the shooter.  According to Thompson, all the independent witnesses provided descriptions of the shooter that fit Clarence rather than Thompson. Respondent replies that (1) a claim that a conviction was against the manifest weight of the evidence is not cognizable in habeas proceedings and (2) there was constitutionally sufficient evidence to support Thompson's conviction.

The due process clause of the Fourteenth Amendment requires that a criminal conviction be based upon proof beyond a reasonable doubt as to every fact necessary to constitute the offense charged.  *In re Winship*, 397 U.S. 358, 363-64 (1970).  The test of whether a conviction is supported by sufficient evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  A habeas court resolves all conflicting inferences in favor of the prosecution, and does not weigh the credibility of witnesses. *Walker v. Engle*, 703 F.2d 959, 969 (6th Cir.), *cert. denied*, 464 U.S. 962 (1983).  The evidence need not be sufficient to convince the habeas court of the petitioner's guilt beyond a reasonable doubt.  *Fuller v. Anderson*, 662 F.2d 420, 435 (6th Cir. 1981), *cert. denied*, 455 U.S. 1028 (1982).  Any conviction based upon evidence insufficient to convince any rational trier of fact of the essential elements of the crime without a reasonable doubt offends the due process clause and may serve as grounds for habeas relief.

A claim that a conviction is against the manifest weight of the evidence differs from a claim that a conviction was based on insufficient evidence.  To determine

11

whether a claim was against the manifest weight of the evidence, a court must re-weigh all the evidence produced at trial, resolve contradictory evidence, and re-weigh credibility.  A federal court reviewing a petition for a writ of habeas corpus lacks the authority to do this.  *Marshall v. Lonberger*, 459 U.S. 422 (1983).  It is incapable, therefore, of determining whether a conviction was against the manifest weight of the evidence.  It may only determine whether a conviction was based on *sufficient* evidence.

Under Ohio law, however, a finding that a conviction was supported by the weight of the evidence subsumes a finding that the conviction was supported by sufficient evidence:

> [A] determination by the Ohio Court of Appeals that the conviction was supported by the manifest weight of the evidence necessarily implies a finding that there was sufficient evidence.  The Ohio Court of Appeals, for instance, has explained that "'[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency.'  Thus, a determination that a conviction is supported by the weight evidence will also be dispositive of the issue of sufficiency."   *State v. Lee,* 158 Ohio App.3d 129, 814 N.E.2d 112, 115 (2004) (citations omitted).

*Nash v. Eberlin*, 258 Fed.Appx. 761, at *3 (6th Cir. 2007).  For this reason, a claim alleging that a conviction was against the weight of the evidence may be treated as a claim that the conviction was upon insufficient evidence.  *Id.*  Thus, the court will treat Thompson's second ground for relief as a claim that his conviction was not supported by constitutionally sufficient evidence.

The state appellate court reviewing Thompson's conviction on direct appeal found that Thompson's conviction was supported by the weight of the evidence.  After reviewing the trial record, the appellate court found that every witness who knew

Thompson identified him as the shooter, including Clarissa, Alexander, Se'Anna Payne, Chantae Payne, and Clarence.  *Thompson*, 2009 WL 344858 at *4.  Clarissa testified that Thompson shot at Duckworth and pointed his gun at the white car containing Roberson just before it crashed and that Thompson was the only person on the scene shooting or possessing a gun.  Transcript of Proceedings ("Tr."), v. XI, pp. 2577-78, 2597-2613.  Alexander identified Thompson as the man who shot Duckworth.  Tr., v. IX, pp. 2075-85, 2094-98, 2101-02.  Se'Anna Payne testified that she heard gunshots from inside her house and went outside in time to see Thompson shoot at the white car containing Roberson just before it crashed.  Tr., v. IX, pp. 2176-95.  Chantae Payne, viewing the incident from her dining room window, identified Thompson as the individual she saw in the street holding a gun just after hearing shots.  Tr., v. XII, pp. 2903-10, 2922-36.  Clarence testified that he saw Thompson shoot at the white car just before it crashed and that Thompson was the only one at the scene shooting or possessing a gun.  Tr., v. XI-XII, pp. 2750-2765, 2776-78.  In addition, the witnesses who did not know Thompson described him sufficiently well to distinguish him from Clarence or selected his picture from a photo array or did both.  *Id.* at *4-*5.  Page described and identified Thompson and testified that he saw Thompson shoot Duckworth and Roberson.  Tr., v. VIII, pp. 1910-16, 1918-23, 1933-40.  Duckworth made a tentative identification of Thompson from a photo array, described him, and testified that Thompson shot him and Roberson.  In sum, Thompson's conviction was not supported merely by sufficient evidence or the greater weight of the evidence:  It was supported by overwhelming evidence.  Thompson's assertion to the contrary is without merit.

Thompson does not show that the state appellate court's determination that his

13

conviction was supported by the greater weight of the evidence resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Consequently, Thompson's second ground for relief should be dismissed.

B.      Ground two:  Whether the trial court erred in denying Thompson's motion to suppress the photo array and the witnesses' identification testimony

Thompson claims in his second ground for relief that the trial court erred in denying his motion to suppress the photo array and the witnesses' identification testimony because they were obtained through overly suggestive investigative techniques.  According to Thompson, the identification procedure used by Det. Smith was suggestive because the detective advised Duckworth, prior to making the identification, that the suspect was in custody.  He also claims that the only evidence identifying him as the shooter came from Clarissa and Clarence, who were themselves involved in the crime.  Respondent denies that the investigative techniques were overly suggestive and that there was any ground for suppressing the results of the photo array or the eyewitness identifications.

A claim that a defendant was convicted upon unreliable identification evidence is a claimed violation of a defendant's due process right to a fair trial.  In *Manson v. Brathwaite*, 432 U.S. 98 (1977), the Supreme Court determined that evidence of varying degrees of reliability are admissible at trial:

It is part of our adversary system that we accept at trial much evidence that has strong elements of untrustworthiness, an obvious example being the testimony of

14

> witnesses with a bias.  While identification testimony is significant evidence, such testimony is still only evidence, and, unlike the presence of counsel, is not a factor that goes to the very heart the "integrity" of the adversary process. Counsel can both cross-examine the identification witnesses and argue in summation as to factors causing doubts as to the accuracy of the identification including reference to both any suggestibility in the identification procedure and any countervailing testimony such as alibi.

*Manson*, 432 at 113 n.14 (quoting *Clemons v. United States*, 133 U.S. App. D.C. 27, 48 (1968) (Leventhal, J., concurring opinion).  "A defendant is denied due process only when the identification evidence is so unreliable that its introduction renders the trial unfair.  As long as there is not a substantial likelihood of misidentification, it is the function of the jury to determine the ultimate weight to be given to the identification." *Smith v. Perini*, 723 F.2d 478 (6th Cir. 1983).  In determining the reliability of an identification, courts should consider "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.  Against these factors is to be weighed the corrupting effect of the suggestive identification itself."  *Manson*, 432 at 114 (citing *Neil v. Briggers*. 409 U.S. 188, 199-200 (1972)).

The state appellate court reviewing the corresponding state claim on direct appeal applied a two-pronged test to determine the admissibility of the challenged identification evidence:

> First, the defendant bears the burden of demonstrating that the identification procedure was unnecessarily suggestive.  If this burden is met, the court must then consider whether the procedure was so unduly suggestive as to give rise to irreparable mistaken identification.  *State v. Page,* Cuyahoga App. No. 84341, 2005-Ohio-1493, citing *Manson v. Brathwaite* (1977), 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140.  "Stated differently, the issue is whether the identification, viewed under the totality of the circumstances, is reliable despite the suggestive

15

procedure." *State v. Wills* (1997), 120 Ohio App.3d 320, 324-325, 697 N.E.2d 1072.

*Thompson*, 2009 WL 344858 at *6.

In applying that test, the state appellate court found the following facts to be relevant:

> In the instant case, Det. Smith conducted the investigation of Roberson's murder.  The police established Thompson as the suspect after interviewing the witnesses.
>
> {¶ 36} Det. Smith and another detective created several photo arrays including Thompson.  They selected photos of individuals who looked similar to Thompson.  Det. Smith also testified that prior to showing the array, he did nothing to suggest which photo to select, nor did he tell the witnesses that the shooter would be in the photo array.
>
> {¶ 37} A review of the suppression hearing reveals that Clarissa, Alexander, Clarence, and the Paynes identified Thompson's photo as the shooter.  These witnesses testified that no one told them whom to pick or whether the shooter was in the photo array.  Furthermore, the witnesses were not shown the same array, but each witness nevertheless identified Thompson as the shooter.
>
> {¶ 38} Duckworth was shown two photo arrays.  Det. Smith testified that two photo arrays were used so police could eliminate Clarence as a suspect.  Only one of the arrays contained Thompson's photo.  Duckworth identified Thompson as the shooter because he recalled that the shooter's eyes were "red," and Thompson's eyes in the photo array were red.  In the photo array without Thompson's photo, Duckworth selected a male whom he thought "looked closer" to Thompson and made this selection based on the "eyes."
>
> {¶ 39} Page was shown a photo array in which he identified Thompson as the shooter.  However, the identification was not unequivocal.  He selected Thompson's photo because he felt that the face and eyebrows resembled the shooter's.  Page was later shown a single photo of Thompson, and he identified Thompson as the shooter.

*Id.* at *6-*7.  The state appellate court also noted that the photographs used in the arrays were similar in race, age, facial features, skin tone, and hair style.  It concluded, therefore, that the trial court did not err when it found that Thompson had filed to satisfy

16

his burden of demonstrating that the identification procedure was suggestive and that the denial of the motion to suppress was supported by competent, credible evidence.

Thompson does not argue that the state courts erred in their findings of fact, nor does he contend that the court erred in its statement of the applicable law.  Thompson also fails to demonstrate that the state courts' decisions were contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented.  Thompson has failed to demonstrate, therefore, that he is entitled to habeas relief because the trial court erred in admitting evidence of the photo arrays.

As described in evaluating Thompson's first ground for relief, Thompson's claim that the only evidence identifying him as the shooter came from Clarissa and Clarence is simply wrong.  There were many eyewitnesses that Thompson was the shooter, and the eyewitness testimony as to that fact was overwhelming.  Thompson's assertion to the contrary is not well-taken.

For the reasons given above, Thompson's second ground for relief, that the trial court erred in denying his motion to suppress the photo array and the witnesses' identification testimony, should be dismissed as without merit.

C.    *Ground three:  Whether the trial court abused its discretion in denying his motion for a mistrial*

Thompson's third ground for relief contends that the court abused its discretion in denying his motion for mistrial because the state did not have good faith basis to ask Duckworth if Clarissa told the shooter, "Dre, stop playing, go back in the house."

17

According to Thompson, "Dre" was one of his nicknames, and the state never produced in discovery evidence that Clarissa had used that nickname.  Respondent replies that the question did not deprive Thompson of a fair trial.

Errors in the application of state law, particularly rulings about the admission of evidence, are not usually generally grounds for habeas relief.  *Bell v. Arn,* 536 F.2d 123 (6th Cir. 1976).  However, where the violation of a state's evidentiary rule denies fundamental fairness, thereby violating due process, courts may grant federal habeas relief.  *Cooper v. Sowders*, 837 F.2d 284 (6th Cir. 1988).  Nevertheless, "courts 'have defined the category of infractions that violate 'fundamental fairness' very narrowly.'" *Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir.1993) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).  The evidentiary rulings of state courts rise to the level of due process violations only if they offend "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."  *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996).

In the present case, the state appellate court reviewing the corresponding claim on direct appeal found that the question to Clarissa to which Thompson objects did not adversely or materially affect Thompson's substantial rights.  The court found that the question occurred in the course of the following exchange:

> On direct examination, Duckworth testified that he recalled Clarissa calling the shooter by his name, but he could not remember the name.  On cross-examination, Duckworth was asked if Clarissa could have said "Boy," which is Clarence's nickname.  Again Duckworth testified that he could not remember what name she used.  Then on redirect, Duckworth was asked if Clarissa could have used the name "Dre."  Initially Duckworth testified that she said "Dre," but then he admitted he could not be certain which name Clarissa used.  The State then asked Duckworth if he was given a choice, which nickname would he choose.  Defense counsel objected, and the trial court

18

directed the State to "Move on."

{¶ 49} Defense counsel argued that the State had no good faith basis to ask this question.  The State argued that it obtained this information from an interview with Duckworth.  The court then stated, "If that was a motion for a mistrial, it's denied."

{¶ 50} In the instant case, the State's questioning was in response to Duckworth's cross-examination.  However, Duckworth never definitely admitted what name Clarissa used.  Therefore, we find that Thompson's substantial rights were not adversely or materially affected.

*Thompson*, 2009 WL 344858 at *8.

Thompson does not argue that the state appellate court erred in its findings of fact or erred in its statement of the applicable law.  Thompson also fails to cite a "principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental" that is offended by the question at issue, nor does this court know of any such principle.  If the question was improper, the impropriety was not so serious as to constitute a due process violation by denying Thompson's right to fundamental fairness.  In short, the state court's conclusion that "Thompson's substantial rights were not adversely or materially affected" by the question is rightly due the deference that the AEDPA requires federal courts to give that conclusion.

Thompson fails to demonstrate that the state courts' decisions were contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented.  Thompson has failed to demonstrate, therefore, that he is entitled to habeas relief because the trial court denied his motion for a mistrial.

D.      *Ground four:  Whether the trial court erred in failing to strike Clarence's*

19

*testimony*

Thompson's fourth ground for relief argues that the trial court erred in failing to strike Clarence's testimony because Clarence was one of the suspected shooters.[1] Respondent denies that Clarence was a ever a suspect in the case.

Respondent cites the testimony of Detective Wally Everett, one of the two detectives investigating the crimes of which Thompson was convicted, that after interviewing the persons at the scene of the murder, the only person the police suspected of doing the shooting was Thompson.  Tr., v. XIV, pp. 3455-56.  Thompson cites no evidence to the contrary.  Thus, the premise of Thompson's argument is simply wrong.

Moreover, even if Thompson were correct that Clarence was suspected of being one of the shooters, Thompson fails to explain why admitting his testimony at trial was erroneous, much less how the admission of that testimony constituted a constitutional violation.  The cure for self-interested testimony is cross-examination, not exclusion.  Absent a showing of constitutional error, Thompson fails to provide any ground for habeas relief.

Thompson fails to demonstrate that the decision of the trial court in admitting Clarence's testimony was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court.  Thompson is not entitled to habeas relief, therefore, on his fourth ground for relief.

---

[1] Thompson also claims that Clarence was the on individual who positively identified Thompson as the shooter.  As has already been discussed, this is wrong.

III.  Conclusion

Thompson's first four grounds for relief are without merit and his fifth ground is procedurally defaulted.  For these reasons, Thompson's petition should be dismissed with prejudice.

Date:  November 14, 2011                    /s/ *Nancy A. Vecchiarelli*
                                            United States Magistrate Judge

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.**  ***See** United States v. Walters, 638 F.2d 947 (6th Cir. 1981).*  ***See also** Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111.*

21